```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: June 29, 2016
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
MAURICE SEYMORE,                                            :
                                                            :
                              Plaintiff,                    :
                                                            :     12-cv-8879 (KBF)
              -v-                                           :
                                                            :     OPINION & ORDER
CHIEF DOCTOR ARKADY CHERCHEVER, LPN           :
AKINPELU IBITOYE, and NICHOLAS PANTEA         :
(PA),                                                       :
                                                            :
                              Defendants.                   :
------------------------------------------------------------X

KATHERINE B. FORREST, District Judge:

Plaintiff Maurice Seymore brings this action pro se against three healthcare providers who allegedly were responsible for his care while he was incarcerated in the Central Punitive Segregation Unit at Rikers Island. Plaintiff, asserting his claims via 42 U.S.C. § 1983, alleges that defendants violated his Eight Amendment rights by providing inadequate medical care from August 17 to 28, 2012. Specifically, he alleges that during these 11 days, defendants ignored his requests for a renewal of a prescription for Percocet, previously prescribed to him for back pain.

Plaintiff filed the initial Complaint on December 4, 2012; he amended the Complaint a year later, on December 10, 2013.[1] (ECF Nos. 1, 29.) On February 20, 2015, the Hon. Vincent L. Briccetti, to whom this case was then assigned, dismissed

---

[1] The Court notes that plaintiff has filed at least four other prisoner's civil rights suits in this Court between 2011 and 2012. (Seymore v. Fletcher et al, 11-cv-1801-PGG; Seymore v. Department of Corr. Services et al., 11-cv-2254-JGK-HBP; Seymore v. The City of New York, et al., 12-cv-6870-GBD-HBP; and Seymore v. New York City et al., 12-cv-7117-KMK-LMS.)

several defendants from the case, leaving only defendants Dr. Arkady Cherchever, nurse Akinpelu Ibitoye, and physician's assistant Nicholas Pantea. (ECF No. 93.) The case was reassigned to the undersigned on March 23, 2015.

Before the Court is defendants' motion for summary judgment. Defendants contend that any inadequacy in medical care could not amount to a constitutional violation as it was not sufficiently serious and in all events, defendants lacked the necessary culpable state of mind. The Court agrees. For the reasons stated below, defendants' motion is GRANTED.

I. FACTUAL BACKGROUND

The Court only recites those facts relevant to the disposition of this motion. All facts referenced are undisputed unless otherwise indicated.

While incarcerated at Rikers Island, plaintiff suffered a slip and fall on August 2, 2010. (Defs.' Stmt. of Undisputed Material Facts ("Defs.' 56.1") ¶ 9.) He was treated at Elmhurst Hospital and discharged a day later with instructions to follow up for pain management at Rikers Island. (Id. ¶ 10.)

Following this event, plaintiff received routine medical care at Rikers Island. He was initially prescribed Naprosyn (Aleve) and Robaxin (a muscle relaxant), but was subsequently switched to Tylenol with codeine and Robaxin. (Id. ¶ 11.) On November 24, 2010, a physician recommended that plaintiff continue physical therapy; plaintiff participated physical therapy until August 22, 2011. (Id. ¶ 13.)

On November 24, 2010, plaintiff was prescribed Percocet. That prescription was renewed every seven days until January 15, 2012. (Id. ¶¶ 15-16.)

In 2012, plaintiff's Percocet prescriptions were renewed for periods of time, but for intermittent weeks, he was prescribed other pain medication instead:

- On January 23, 2012, one day after his last Percocet prescription expired, plaintiff returned to the medical clinic and complained of lower back pain. (Id. ¶¶ 19, 21.) After an examination, a physician's assistant prescribed him Naprosyn, not Percocet. (Id. ¶ 19.)

- On January 27, 2012, plaintiff once again returned to the medical clinic and requested a renewal of Percocet, although he denied back pain at the time. Plaintiff's Percocet prescription was renewed at this time, and every seven days until May 16, 2012. (Id. ¶¶ 21-22.)

- On May 24, 2012, plaintiff returned to the clinic requesting Percocet. A physician's assistant prescribed him Naprosyn and Robaxin, not Percocet. (Id. ¶ 23.)

- On May 29, 2012, plaintiff returned to the clinic complaining of back pain. A different physician's assistant renewed the Percocet prescription. (Id. ¶ 24.) The prescription was renewed approximately every seven days until August 10, 2012. (Id. ¶ 26.)

On June 22, 2012, a physician evaluated plaintiff and renewed the physical therapy prescription. (Id. ¶ 25.)

The events giving rise to plaintiff's complaint occurred between August 17 and 28, 2012. On August 17, 2012, plaintiff was transferred to the Central Punitive Segregation Unit ("CPSU"). (Id. ¶ 28.) That afternoon, plaintiff received his last prescribed dose of Percocet; the prescription expired on that day. (Id. ¶ 29.)

For the next 11 days, plaintiff did not receive any Percocet. This absence is at the heart of plaintiff's claims in this matter.

3

Plaintiff asserts that on August 18 and 19, 2012, an African-American woman named Akinpelu Ibitoye performed medical sick call rounds at the CPSU.[2] (Id. ¶¶ 31-32.)  However, defendant Akinpelu Ibitoye signed an affidavit indicating that he is an African-American male and did not make sick call rounds at the CPSU in August 2012.  (Id. ¶ 34.)

Plaintiff also alleges that on August 20 and 21, 2012, a woman named "Dr. Crisp" (physician's assistant Sheila Criss-Holbeck, who was previously dismissed as a defendant in this case) conducted sick call rounds.  (Id. ¶ 37.)[3]  Plaintiff claims that he gave Criss-Holbeck a letter directed to Dr. Cherchever regarding his Percocet prescription.  (Id. ¶ 38.)  According to plaintiff, Criss-Holbeck told him that she had spoken to Dr. Cherchever and she had ordered the Percocet prescription renewal.  (Id. ¶¶ 37-38.)  This statement is unsupported by any record evidence.  The only admissible record evidence is in conflict.

Dr. Cherchever signed an affidavit indicating that he was on vacation from August 20 to August 24, 2012 and did not return to the office until August 27, 2012.  (Id. ¶ 39.)  He also stated that he never received any letter or other correspondence from plaintiff in August 2012.  (Id.; see also Alt Decl. Ex. K, Cherchever Aff.)  Plaintiff does not contest these statements.

In addition, on August 20, plaintiff attended physical therapy for one and a half hours.  (Id. ¶ 40.)  He rode a bicycle for an extra half-hour that day and did not

---

[2]   Plaintiff served a letter in this action on March 24, 2015, stating that he believes Ibitoye is a "brown skin female."  (Id. ¶ 33; Alt Decl. Ex. I.)
[3]   A medical note from August 20, 2012 indicates that plaintiff had "lumbago" (lower back pain) but did not indicate severity or any specific complaints.  (Alt Decl. Ex. H at 193.)

ask the physical therapist to obtain pain medication or other treatment. (Id.) The healthcare provider's note from this physical therapy session noted that plaintiff's "Current Medications" included an aspirin prescription that would expire on November 17, 2012. (Alt Decl. Ex. H at 193; see also id. at 197.)

Plaintiff does not remember who conducted sick call rounds on August 22, 2014. (Id. ¶ 41.)

Medical notes from August 23, 2012 state that plaintiff "laid on his bed and refused to engage with clinician. He motioned that he was okay." (Alt Decl. Ex. H at 188, 190.) It also noted that plaintiff's "Current Medications" included aspirin. (Id.)

Plaintiff alleges that defendant Nicholas Pantea conducted sick call rounds on August 23 and 24, 2012. (Id. ¶ 43.) Pantea told plaintiff on August 23 that he would verify whether plaintiff had a Percocet prescription.[4] (Id. ¶ 44.)

Plaintiff also alleges that Ibitoye again conducted the sick call rounds on August 25 and 26, 2012. (Defs.' 56.1 ¶ 45.) He also claims that a yet-unidentified "African male" conducted the rounds on August 27, 2012. (Id. ¶ 46.)

On August 28, 2012, plaintiff was being escorted to the bathroom to take a shower when he slipped on the stairs. (Id. ¶ 47.) Plaintiff alleges that his back "gave out." (Id. ¶ 47.) He was brought to the clinic and evaluated by Pantea and

---

[4] Plaintiff's allegations regarding Pantea's statements on the following day, August 24, have varied over time. In his Amended Complaint and brief in opposition to this motion, plaintiff asserts that Pantea told him he never put in the request. (Am. Compl. at 10; Pl.'s Opp. Br. at 11). In his deposition, however, plaintiff stated that Pantea told him he had put in the prescription renewal order. (Defs.' 56.1 ¶ 44; Alt Decl. Ex. G, Seymore Dep., Tr. 228.) Resolution of this conflict is unnecessary to resolution of this motion.

Ibitoye. Medical notes from the evaluation showed that plaintiff was "ambulat[ing] with a steady gate" and that his pain scale results were 4 out of 10. (Alt Decl. Ex. H at 186.) The notes further indicated that he was not in acute distress and that there was "mild degenerative changes" and "mild dextroscoliosis" in his back. According to the notes, plaintiff complained of "chest and back pain x2 days." (Id. at 183-84.) After this physical examination, Pantea Percocet for plaintiff. (Defs.' 56.1 ¶¶ 49-50.) Plaintiff has not alleged any additional injury resulting from the fall, nor is there any indication of medical complications following the fall. (See Alt Decl. Ex. H at 180-87.)

Plaintiff alleges that Percocet was prescribed to him for the period between August 28, 2012 until April or May 2013, after which point his medication was changed to Baclofen (a muscle relaxant), Flexeril (another muscle relaxant) and Neurontin (for nerve pain). (Defs.' 56.1 ¶¶ 51-56.)

II.  LEGAL STANDARDS

   A.  Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not bear the ultimate burden on a particular claim or issue, it need only make a showing that the non-moving party lacks evidence from which a reasonable jury could find in the non-moving party's favor at trial. Id. at 322-23.

In making a determination on summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).  Once the moving party has discharged its burden, the opposing party must set out specific facts showing a genuine issue of material fact for trial.  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).  "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," as "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist."  Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal citations omitted).  In addition, "[o]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment."  Porter v. Quarantillo, 722 F.3d 94, 97 (2d Cir. 2013) (internal quotation marks and citation omitted).

Only disputes relating to material facts—i.e., "facts that might affect the outcome of the suit under the governing law"—will properly preclude the entry of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (stating that the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts").  The Court should not accept evidence presented by the nonmoving party that is so "blatantly contradicted by the record . . . that no reasonable jury could believe it."  Scott v. Harris, 550 U.S. 372, 380 (2007); see also Zellner v. Summerlin, 494 F.3d 344, 371 (2d Cir. 2007)

("Incontrovertible evidence relied on by the moving party . . . should be credited by the court on [a summary judgment] motion if it so utterly discredits the opposing party's version that no reasonable juror could fail to believe the version advanced by the moving party.").

"[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." Estelle v. Gamble, 429 U.S. 97, 106 (1976) (citations and internal quotation marks omitted). Accordingly, the Court "liberally construe[s] pleadings and briefs submitted by pro se litigants . . . reading such submissions to raise the strongest arguments they suggest." Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007). However, "we cannot read into *pro se* submissions claims that are not consistent with the *pro se* litigant's allegations, or arguments that the submissions themselves do not suggest . . . *pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law . . . ." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (internal citations and quotation marks omitted).

B.  Deprivation of Medical Care

To succeed on a § 1983 claim for deprivation of medical care, a plaintiff must allege that a defendant undertook "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106; see also Cuoco v. Moritsugu, 222 F.3d 99, 106 (2d Cir. 2000). The deliberate indifference standard includes both subjective and objective components. See Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011).

1. Subjective component

To fulfill the subjective component, "the official charged with deliberate indifference must act with a 'sufficiently culpable state of mind.' That is, the official must 'know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (alterations omitted) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991) and Farmer v. Brennan, 511 U.S. 825, 837 (1994)).  A sufficiently culpable state of mind is "the equivalent of criminal recklessness." Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996). It must "entail[] something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Id. (quoting Farmer, 511 U.S. at 837).

2. Objective component

To fulfill the objective component, "the alleged deprivation [must be] sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." Hill, 657 F.3d at 122 (quoting Hathaway, 99 F.3d at 553). There is no requirement that the pain complained of must be "at the limit of human ability to bear" or that the condition degenerate into a "life-threatening one." Brock v. Wright, 315 F.3d 158, 163-64 (2d Cir. 2003). The relevant inquiry is whether, given the seriousness of the plaintiff's medical injury, the care provided by the defendant was objectively reasonable. Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir. 2006).

9

Where "a prisoner alleges a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious to support an Eight Amendment Claim." Bilal v. White, 494 Fed. App'x. 143, 145 (2d Cir. 2012) (internal quotation marks, citations, and alterations omitted).

III.   DISCUSSION

    A.   Seriousness of the Alleged Deprivation

Based on the record evidence, no reasonable juror could conclude that the alleged delay in providing plaintiff with Percocet created a sufficiently serious deprivation to constitute a violation of the Eighth Amendment. Before and after the 11 days in question, plaintiff received consistent care and pain management; during the 11 days, he received medical visits, followup, and physical therapy. At no point was he refused medical treatment. Although plaintiff alleges that he suffered from back pain, there is no record evidence of "condition of urgency, one that may produce death, degeneration, or extreme pain" during the period in question. Hathaway, 99 F.3d at 553; Bilal, 494 Fed. App'x. at 146. Even construing all facts in plaintiffs' favor—that he suffered from some back pain and that Percocet would have alleviated such pain, plaintiff nevertheless has failed to establish that the temporary delay in Percocet during the 11-day period alleged was substantially medically inadequate and rises to the level of a constitutional violation.

10

First, as discussed above, there is no evidence in the record that plaintiff suffered serious pain in the period between August 17 and August 28, 2012. See Hathaway, 99 F.3d at 553. Medical records from August 17 to August 28 show that although plaintiff saw healthcare professionals during this time, he did not complain of pain. On August 20, plaintiff participated in physical therapy for 1.5 hours without complaint without complaining of pain. On August 23, he "refused to engage with clinician" and "motioned that he was okay." (Alt Decl. Ex. H at 188; Defs.' 56.1 ¶ 40.) Medical notes from following plaintiff's fall on August 28th only indicated "mild" degenerative changes and dextroscoliosis accompanied by pain at a 4 out of 10 scale. (Alt Decl. Ex. H. at 186.) At that visit, plaintiff complained of pain for only two days. (Id. at 183.) Plaintiff was then prescribed Percocet. (Id. at 186.)

Second, plaintiff continued to receive physical therapy and aspirin for his back pain during the relevant period, and there is nothing in the record to suggest that relief from these sources were insufficient to ameliorate any pain he experienced. In fact, plaintiff was able to ride a bicycle for "an extra half hour" during physical therapy (which lasted a total of 1.5 hours) on August 20, 2012. (Defs.' 56.1 ¶ 40.) See Rush v. Fischer, 923 F. Supp. 2d 545, 555 (S.D.N.Y. 2013) ("The decision to prescribe one form of pain medication in place of another does not constitute deliberate indifference to a prisoner's serious medical needs.").

Third, although plaintiff alleges that his back "gave out" on August 28 and caused him to fall on the stairs, there is no evidence of any injury resulting from the

11

fall.[5]  (See Alt Decl. Ex. H at 180-87.)  He was prescribed Percocet during the medical visit immediately following the fall.  (Id.)

Plaintiff routinely received care for his back pain since his fall in 2010.  The uncontroverted record shows that he was provided not only Percocet but other medications and physical therapy.  Although plaintiff alleges that he was temporarily denied Percocet for 11 days, he has not demonstrated how this delay is, "in objective terms, sufficiently serious to support an Eight Amendment Claim."  Bilal, 494 Fed. App'x. at 145.  He has not adduced any evidence to show that the alleged deprivation of Percocet for a temporary period produced "death, degeneration, or extreme pain" or otherwise serious pain.  Hathaway, 99 F.3d at 553; Bilal, 494 Fed. App'x at 146.  See also Chatin v. Artuz, 28 F. App'x 9, 10 (2d Cir. 2001) (holding that delay in treatment for bone spurs and sprained ankle was insufficiently serious); Cole v. Fischer, 416 F. App'x 111, 113 (2d Cir. 2011) (holding that second degree burns from makeshift hot pack to treat back pain was insufficiently serious); Brown v. White, No. 08 Civ. 200 (GLS), 2010 WL 985184, at *10 (N.D.N.Y. Mar. 15, 2010) (holding that plaintiff's "subjective claims of 'serious pain'" in his back, "unaccompanied by substantial medical complications are not sufficient to create a factual issue as to whether he was suffering from a 'serious,' unmet medical need); Johnson v. Wright, 477 F. Supp. 2d 572, 575 (W.D.N.Y. 2007)

---

[5]  The Court notes that the statement in the Memorandum and Order dated February 20, 2015 that plaintiff "contends this fall further injured his back" is incorrect, and thus withdrawn. (ECF No. 93, at 6). Although plaintiff alleged in his Amended Complaint that his "lower back feels like it's about to[] snap" and that he cannot "lay sideways because of sev[e]re pain to the lower back area," there is no suggestion in the pleadings or in the record as to when these specific symptoms began or how they are connected to the August 28, 2012 fall. (Am. Compl. at 16.)

(holding that knee injury was insufficiently serious to trigger Eighth Amendment violation), aff'd, 324 F. App'x 144 (2d Cir. 2009).  Finally, plaintiff's own allegation of pain is insufficient to raise an issue of fact in the fact of the lack of such evidence in the record.  See Bilal, 494 Fed. App'x at 146.  For these reasons, plaintiff cannot sustain an Eighth Amendment claim for deprivation of medical services.

      B.     Defendants' State of Mind

Even if plaintiff raised a triable issue on the objective element of the Eight Amendment violation, he has not with regards to the subjective requirement.  He has failed to adduce any evidence that in failing to prescribe Percocet for the 11-day period, the defendants knew of and disregarded an excessive risk to his health.  See Hill, 657 F.3d at 122.

First, with respect to all defendants, plaintiff has not adduced any evidence that defendants "kn[ew] of and disregard[ed] an excessive risk to [his] health or safety." Hathaway, 99 F.3d at 553.  Although plaintiff alleges that during the 11 days in question he repeatedly requested Percocet and it is undisputed that plaintiff had a diagnosis of lower back pain, this is insufficient to suggest that defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]"—i.e., the severity of the pain at that specific time—or to suggest that defendants actually "dr[e]w the inference." Hathaway, 99 F.3d at 553.

In fact, the undisputed medical evidence demonstrates that plaintiff received consistent and routine medical care while incarcerated.  It also demonstrates that during the period in question, defendants were not in a position to believe that

13

plaintiff was in danger of suffering serious risk to his health.  In fact, during the 11 day period, plaintiff indicated a number of times (explicitly or implicitly) that he was not in pain:  on August 20, he participated in physical therapy for 1.5 hours without complaint (including bicycling for "an extra half hour") and on August 23, he "refused to engage with clinician" and "motioned that he was okay."  (Alt Decl. Ex. H at 180-88; Defs.' 56.1 ¶ 40.)  Medical notes in the days preceding the August 28 fall on the stairs also did not indicate any complaints of excessive pain from plaintiff.  (See Alt Decl. Ex. H at 180-84.)

Furthermore, plaintiff had access to aspirin and physical therapy during the entire period in question and has not adduced any evidence that this was known to be insufficient.  (Id. at 180-88.)  Plaintiff's belief that he should have received Percocet instead or in addition is "not evidence of defendants' deliberate indifference to his condition."  Wright v. Rao, 622 F. App'x 46, 47 (2d Cir. 2015).  See also Hill v. Curcione, 657 F.3d 116, 123 (2d Cir. 2011) (dismissing plaintiff's claim that prescription of Motrin was insufficient for his pain management because "a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment"); Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998) ("[M]ere disagreement over the proper treatment does not create a constitutional claim.")

Specifically as to defendant Ibitoye, there is no evidence to suggest that he was involved in plaintiff's medical care during the period in question prior to the fall on August 28.  Although plaintiff averred that the person who performed

medical sick call rounds at the CPSU on August 18, 19, 25 and 26 was Ibitoye, he also stated that this individual was an African-American woman. (Defs.' 56.1 ¶ 31, 45.) However, it is undisputed that defendant Ibitoye is actually an man and did not make sick call rounds at the CPSU at all in August 2012.[6] (Id. ¶¶ 32, 34.) Therefore, there is nothing in the record to suggest that Ibitoye possessed the mental state necessary to establish a claim for deliberately indifference to plaintiff's medical needs.

As to defendant Dr. Cherchever, there is no evidence to suggest that he had any knowledge of plaintiff's condition during the period in question. Plaintiff alleges that he sent a note addressed to Dr. Cherchever through a physician's assistant on August 20, 2012. (Id. ¶¶ 37-38.) However, there is no dispute that Dr. Cherchever was on vacation and did not return to the office until August 27, 2012. (Id. ¶ 39.) Plaintiff also does not dispute Dr. Cherchever's affirmation that he did not receive any note from plaintiff in August 2012. (Id.) Instead, plaintiff argues that Dr. Chercherver is liable because of supervisory inaction—that Dr. Cherchever should have put in place procedures to ensure that prescriptions are properly filled in his absence. However, this alleged inadvertence is insufficient to meet the subjective element of the deliberate indifference claim. First, any suggestion that Dr. Cherchever left no medical personnel in charge able to prescribe medications is pure speculation; indeed, the record demonstrates that physician's assistants could

---

[6] Plaintiff appears to acknowledge that Ibitoye is not the correct defendant, but argues in his opposition brief that defendants "misle[]d the courts and the plaintiff . . . by not producing . . . all persons . . . that conducted the sick call rounds for the days [in] question." (Pl.'s Opp. Br. at 3.) The Court has already ruled that based on representations of counsel regarding the inability to locate the medical logs in the storage facility, no further action was necessary. (ECF Nos. 130, 135, 136.)

15

and did prescribe medications. Second, there is no record evidence (direct or circumstantial) as to Dr. Cherchever's state of mind, let alone that he personally ignored a risk of serious harm to plaintiff. Indeed, the evidence is to the contrary. Plaintiff acknowledges that Dr. Cherchever had prescribed him medication in July 2012. (Pl.'s Opp. Br. at 15.) There is no record evidence that prior to leaving for vacation, Dr. Cherchever had any reason to believe that plaintiff would suffer from pain that could not be managed in his absence. There is also no evidence that while on vacation, Dr. Cherchever received any information that plaintiff was in pain. Thus, the fact that Dr. Cherchever went on vacation in August 2012 does not suggest that he had a sufficiently culpable mindset, and the record fails to raise a triable issue. See Hathaway, 99 F.3d at 553.

Finally, plaintiff has not raised a triable issue regarding defendant Pantea's state of mind. Plaintiff alleges that Pantea conducted sick call rounds on August 23 and 24, 2012, and that on August 23 he told plaintiff he would "look into" plaintiff's Percocet prescription. (Id. ¶ 44.) Although plaintiff has alleged both that 1) Pantea refused to put in the order and 2) Pantea told him he already put in the order, on either set of facts, plaintiff's claim fails. If Pantea did in fact put in the order for Percocet on August 24 as plaintiff testified in his deposition, there is nothing in the record suggesting that Pantea was responsible for the fact that the medication did not reach plaintiff in the following three days, when Pantea was not on duty for sick call rounds. (Id. ¶¶ 44-46.) Even if Pantea had failed to put in the order for Percocet, there is no record evidence suggesting that Pantea either (1) was "aware

16

of facts from which an inference could be drawn that a substantial risk of serious harm" existed from a temporary delay in plaintiff's access to Percocet, or 2) actually "dr[e]w the inference." Hill, 657 F.3d at 122.  Because plaintiff has not presented any evidence regarding Pantea's state of mind, and there is nothing in the record to raise a genuine issue of material fact to support the deliberate indifference claim.

IV.    CONCLUSION

The Court has considered plaintiff's other arguments and finds that they are without merit.  Defendants' motion for summary judgment is GRANTED.  The Clerk of Court is directed to terminate the motion at ECF No. 139 and to terminate this action.

SO ORDERED.

Dated:     New York, New York
           June 29, 2016

_____
KATHERINE B. FORREST
United States District Judge

CC:   Maurice Seymore
      13-A-1088
      Woodbourne Correctional Facility
      99 Prison Road
      P.O. Box 1000
      Woodbourne, NY 12788-1000